Klaus H. Hamm, OSB# 091730
Email: Klaus.hamm@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon St., Ste. 1600
Portland, Oregon 97204
Telephone:  (503) 595-5300
Facsimile:  (503) 595-5301

John M. Weyrauch, *pro hac vice*
Email: jmweyrauch@dbclaw.com
Peter R. Forrest, *pro hac vice*
Email: pforrest@dbclaw.com
DICKE, BILLIG & CZAJA, PLLC
100 South Fifth Street, Suite 2250
Minneapolis, MN 55402
Telephone:  (612) 573-2000
Facsimile:  (612) 573-2005

*Attorneys for Defendants*
ROCKLER RETAIL GROUP, INC.
ROCKLER COMPANIES, INC.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MAJED QUAIZ,** <br><br> Plaintiff, <br><br> v. <br><br> **ROCKLER RETAIL GROUP, INC. and ROCKLER COMPANIES, INC.,** <br> Defendants. | Civil Case No.: 3:16-cv-01879-SI <br><br> **DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO IDENTIFY ALLEGED TRADE SECRET(S) WITH REASONABLE PARTICULARITY** <br><br> **REQUEST FOR ORAL ARGUMENT** |

## <u>LOCAL RULE 7-1 CERTIFICATION</u>

The parties made a good faith effort through telephone conferences to resolve this dispute

and have been unable to do so.

DEFENDANTS' MOTION TO COMPEL                                    1

## MOTION

Defendants Rockler Retail Group, Inc. ("RRG") and Rockler Companies, Inc.

("Rockler") move the Court pursuant to Rule 26 of the Federal Rules of Civil Procedure to

compel Plaintiff Majed Quaiz as part of Plaintiff's initial disclosures under Rule 26(a) to identify

Plaintiff's alleged trade secret(s) with reasonable particularity.

## MEMORANDUM

Plaintiff's Amended Complaint alleges trade secrets in a concept and design for a clamp

he disclosed to Defendant Rockler in 2012, which Plaintiff alleges Rockler misappropriated

when it developed and started selling a corner clamping jig in 2015. Plaintiff's Amended

Complaint does not show Plaintiff's clamp or Rockler's corner clamping jig, but they are

substantially different in their design, as discussed below. Further, the general concept of

Plaintiff's clamp was known publicly well before Plaintiff submitted his clamp to Rockler, and

Plaintiff disclosed his clamp design in a patent application before Rockler started selling the

accused corner clamping jig. Defendants therefore do not know what Plaintiff's alleged trade

secrets are, and request the Court to compel Plaintiff to identify them with reasonable

particularity.

## BACKGROUND

### A.     Woodworking in General

Rockler has been in the woodworking and hardware supply business for over 60 years,

developing and selling products for woodworkers via a chain of stores and global sales via its

catalogs and internet website. Woodworkers often align materials at right angles to each other, *i.e.*,

to form "square" corners. Thus, proper alignment requires "squaring," and products that define

right angles for this purpose are known as "squares." A very similar product used by woodworkers

is a "corner clamp," which holds and clamps two pieces of wood together at the ninety degree angle, so that they can be joined by glue or fasteners (*e.g.*, nails or screws).

The concept of a corner clamp is both old and well known in the woodworking field. For example, a corner clamping assembly is shown in U.S. Patent No. 4,984,775 (the "'775 patent"), which issued in 1991.[1]  (Weyrauch Declaration ¶ 2, Exhibit A). The '775 patent Abstract states that the corner clamping assembly "[has] two screw clamp assemblies, each clamp assembly being oriented perpendicular to one leg of an L-shaped frame."  Figure 1 from the '775 patent is shown below.



(U.S. Patent No. 4,984,775)

---

[1] As discussed further below, Plaintiff disclosed his personal knowledge of the '775 patent to the U.S. Patent and Trademark Office (USPTO) on December 28, 2015, over nine months prior to bringing this trade secret action.

B.    Rockler's Website and Plaintiff's Submission

Rockler's website includes a web page entitled "New Product Ideas" with an online form for individuals interested in submitting a product idea to Rockler. In mid-2012, Plaintiff submitted this online form to Rockler. (Amended Complaint ¶¶ 10-12). Rockler responded to Plaintiff via email, and Plaintiff then allegedly emailed drawings of his clamp design to Rockler. (Amended Complaint ¶¶ 13-14). Rockler subsequently declined to enter into any business relationship with Plaintiff. (Amended Complaint ¶ 16).

C.    Plaintiff Files a Patent Application on His Clamp Design

On February 13, 2015, Plaintiff filed a non-provisional patent application with the USPTO that disclosed the same corner clamp Plaintiff submitted to Rockler. (Weyrauch Declaration ¶ 3, Exhibit B). The USPTO published Plaintiff's patent application on March 10, 2016 (prior to Plaintiff's original complaint).[2]  (*Id.*). The USPTO records show that on December 28, 2015, Plaintiff disclosed the '775 patent to the USPTO. (Weyrauch Declaration ¶ 4, Exhibit C).

---

[2] Once a U.S. Patent Application is published by the USPTO, the application and related materials become publicly available through the USPTO's web site. Defendants learned of Plaintiff's patent application shortly after Plaintiff filed his September 23, 2016 original complaint. The USPTO subsequently issued U.S. Patent No. 9,498,868 to Plaintiff on November 22, 2016.

DEFENDANTS' MOTION TO COMPEL                                      4

Plaintiff's published patent application and issued patent includes drawings (shown below with highlighting added) of the same clamp design Plaintiff alleges he disclosed to Rockler. (Weyrauch Declaration ¶ 3, Exhibit B).



FIG. 10        FIG. 11        FIG. 5

Plaintiff's drawings also show the same corner clamping concept disclosed in the '775 patent, namely, "two screw clamp assemblies, each clamp assembly being oriented perpendicular to one leg of an L-shaped frame." Specifically, Plaintiff's disclosed clamp design consists of two separate components: a right-angle or L-shaped frame (shown in green) and a clamp (shown in yellow). The clamp includes a clip (shown in red) that connects to a rail (shown in purple) formed along each leg of the L-shaped frame. A moveable jaw on the clamp (shown in white) moves along a threaded shaft by turning a knob on the clamp. A material (e.g., a panel of wood) positioned between the jaw and the leg of the L-shaped frame is held in place by moving the jaw along the threaded shaft until the jaw engages the material.

D.    The Accused Product In This Litigation

Plaintiff alleges that a corner clamping jig Rockler began selling in August 2015 misappropriated Plaintiff's trade secrets by using Plaintiff's "concept, design, and photos to design

and manufacture an altered version of [Plaintiff's] Clamp." (Amended Complaint ¶¶ 20, 22). Plaintiff alleges that he realized from merely "review[ing] Rockler's corner clamping jig" that "it misappropriated his concept and design." (Amended Complaint ¶ 19). Rockler's corner clamping jig, which was not shown in Plaintiff's Complaint, is shown below:



(Rockler's corner clamping jig)

(Weyrauch Declaration ¶ 10).

The corner clamping jig consists of a right-angle base integrally formed with a clamp mount on an outer edge of each leg of the base. A threaded clamp screw carried on the clamp mount has a knob on one end and a cushioned pad on the opposite end. The clamp screw, when rotated, moves the cushioned pad toward the respective inner edge of each leg of the base. The inner edges of each leg include a short elevated lip. The Rockler corner clamping jig forms a base for holding two pieces of wood at a right angle, but additional structures are required for the wood to be held in place. In other words, the corner clamping jig by itself does not hold two pieces of wood together at a right angle.

DEFENDANTS' MOTION TO COMPEL                                                    6

E.     <u>Requests for Identification of Plaintiff's Trade Secrets</u>

Upon receiving Plaintiff's originally filed complaint, Rockler conducted a search to locate copies of communications with Plaintiff, and the drawings Plaintiff alleges he emailed to Rockler. Email exchanges with Plaintiff were located, but the drawings were not. On or about October 11, 2016, the undersigned spoke to Plaintiff's counsel, Ms. Andrea Meyer, and indicated Rockler was unable to locate any drawings of Plaintiff. Attorney Meyer was asked to provide copies of the drawings referenced in Plaintiff's Complaint. On October 13, 2016, Attorney Meyer emailed 14 drawings to the undersigned. (Weyrauch Declaration ¶ 6).

On October 14, 2016, Plaintiff's counsel, Mr. Brian Chenoweth, called the undersigned. During this phone call, Mr. Chenoweth was notified that Defendants did not understand what Plaintiff's alleged trade secrets were in view of a comparison of the drawings provided by Ms. Meyer to those of Plaintiff's U.S. Patent Application. Mr. Chenoweth did not provide an explanation of what the alleged trade secrets were. (Weyrauch Declaration ¶ 7).

Subsequently, on December 27, 2016, during the meeting of counsel under Rule 26(f), Defendants' counsel again notified Plaintiff's counsel that Defendants did not know what was alleged as trade secrets. Plaintiff's counsel was asked to identify what features in Defendants' corner clamping jig allegedly reflected Plaintiff's trade secrets, but he did not do so. (Weyrauch Declaration ¶ 8).

On January 19, 2017, Defendants proposed adding the following paragraph to the proposed discovery plan:

> 6)     <u>Identification of Plaintiff's alleged trade secrets</u>
> Defendants request that as part of Plaintiff's initial disclosures, Plaintiff be required to identify its trade secret(s) with "reasonable particularity," as defined by prior decisions of the District of Oregon.

DEFENDANTS' MOTION TO COMPEL                                                    7

> *See Vesta Corp. v. Amdocs Management Ltd.,* 2016 U.S. Dist. LEXIS
> 45741 at *5 (D. Oregon, April 1, 2016); *Nike, Inc. v. Enter Play Sports,*
> *Inc.,* 305 F.R.D. 642, 645 (D. Oregon 2015); *St. Jude Med. S.C., Inc.*
> *v. Janssen-Counotte,* 305 F.R.D. 630 (D. Oregon 2015).

(Weyrauch Declaration ¶ 9). Plaintiff's counsel refused, asserting "[t]he cases you cite are not on point, and we don't agree that you cannot determine what we are claiming are the trade secrets with reasonable particularity."  (Weyrauch Declaration ¶ 5, Exhibit D).

Accordingly, the parties have a dispute concerning Plaintiff's obligation to identify his alleged trade secret(s) with reasonable particularity. This dispute was identified to the Court on January 25, 2017 (ECF No. 24), and this motion follows the Court's order of later that day (ECF No. 25).

## ARGUMENT

A.    Legal Standard

"To establish a claim under Oregon's Uniform Trade Secrets Act, ORS 646.460, a plaintiff must demonstrate that (1) the subject of the claim qualifies as a statutory trade secret; [and] (2) the plaintiff employed reasonable measures to maintain the secrecy of its trade secrets." *Vesta Corp. v. Amdocs Management Ltd.*, 80 F.Supp.3d 1152, 1163-64 (D. Or. 2015) ("*Vesta I*"), *citing W. Med. Consultants, Inc. v. Johnson*, 835 F.Supp. 554, 557 (D. Or. 1993) *aff'd*, 80 F.3d 1331 (9th Cir. 1996).

Under ORS 646.461(4), those statutory requirements include that the information alleged to be a trade secret is not "generally known to the public or to other persons who can obtain economic value from its disclosure or use," and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Thus, courts regularly require a trade secret plaintiff to "identify its alleged trade secrets with sufficient particularity so that defendants are able to determine whether the information in question was in fact secret and whether it was in fact not readily ascertainable through appropriate means." *Vesta*, 80 F.Supp.3d at 1164, quoting *Jamison v. Olin Corp.-Winchester Div.,* No. 03-1036-KI, 2005 WL 7213837, at *9 (D. Or. Oct. 4, 2005) *report and recommendation adopted*, No. 03-1036-KI, 2005 WL 2897036 (D. Or. Nov. 3, 2005).

This Court has found that "the 'reasonable particularity' standard reflects the Court's authority, pursuant to the Federal Rule of Civil Procedure 26 requirements of early disclosure of evidence, and the Court's authority to control the timing and sequencing of discovery in the interests of justice." *Vesta Corp. v. Amdocs Management Ltd.*, 147 F.Supp.3d 1147, 1153 (D. Or. 2015) ("*Vesta II*"). In *Vesta II*, this Court ruled, "Plaintiff is required to identify the trade secrets it claims Defendants misappropriated with reasonable particularity before Defendants are required to produce their confidential information and trade secrets to Plaintiff in discovery." *Id.* at 1154. In a subsequent decision, this Court adopted the following definition of "reasonable particularity":

> a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets.

*Vesta Corp. v. Amdocs Management Ltd.*, 2016 U.S. Dist. LEXIS 45741 at *4-*5 (D. Or. April 1, 2016) ("*Vesta III*"), quoting *BioD, LLC v. Amnio Tech., LLC*, 2014 WL 3864658 at *5 (D.Ariz. Aug. 6, 2014).

Even if identified with "reasonable particularity," discovery regarding a trade secret claim should not be unconstrained. Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery "that is relevant to any party's claim or defense and proportional to the needs of the

case" considering, *inter alia*, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26 also states, however, that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that … (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(c).

B.     Plaintiff's Trade Secret Must Be Identified to Avoid Excessive Discovery

1.  Plaintiff's Clamp Bears No Resemblance To Rockler's Jig

Even the most basic comparison of Plaintiff's patent diagrams to the photographs of the Rockler corner clamping jig accused of misappropriation reveals <u>no</u> obvious similarity between the two, except in terms of the broadest functional description: both have "two screw clamp assemblies, each clamp assembly being oriented perpendicular to one leg of an L-shaped frame." It will be impossible for the court and the parties to evaluate what discoverable evidence will shed light on the question of whether misappropriation has occurred until and unless Plaintiff provides a more detailed identification of the alleged trade secrets.

2.  Plaintiff Put His Clamp In The Public Domain

Regardless of what portion of his clamp Plaintiff believes to be a trade secret, because Plaintiff's clamp has been fully disclosed in Plaintiff's own patent application, the Court and the parties cannot avoid the question of whether a trade secret even exists anymore (if one ever did). "[I]t is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain. Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished and the patentee's only protection is that afforded under the patent law." *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) (quotation omitted). Early identification of the alleged

trade secret will "force[] the plaintiff to map out its case from the beginning … and enable[] the defendant to understand the scope of plaintiff's claim and to frame defenses." Hornick, John F. *et al.*, "Trade Secret Identification: Prerequisite to Discovery," *IP Litigator*, March/April 2015, available at http://www.finnegan.com/resources/articles/articlesdetail.aspx?news=6b7d13a6-5cf1-4444-a2fe-37f796e7134e (last accessed January 24, 2017).

This is especially relevant in view of the general state of the public domain in the area of corner clamps as set out above. As this stage, Defendants know that: (1) the '775 Patent version of "two screw clamp assemblies, each clamp assembly being oriented perpendicular to one leg of an L-shaped frame" was in the public domain as early as the 1990s; (2) Plaintiff disclosed to Defendants yet another version of "two screw clamp assemblies, each clamp assembly being oriented perpendicular to one leg of an L-shaped frame"; and (3) by filing a patent application, Plaintiff put into the public domain that same arrangement of "two screw clamp assemblies, each clamp assembly being oriented perpendicular to one leg of an L-shaped frame."

3. Plaintiff's Pleadings Are Insufficient

Plaintiff's Amended Complaint does not identify his trade secrets. Instead, its conclusory allegations assert that the "concept and design" of his clamp, or the "plans, concepts, designs, specifications, and ideas" regarding his clamp are the subject of trade secrets (i.e., more than one trade secret), and that such trade secrets were misappropriated by Rockler's corner clamping jig. (Amended Complaint ¶¶ 19, 20, 22). Plaintiff alleges that he realized from merely "review[ing] Rockler's corner clamping jig" that "it misappropriated his concept and design." *Id.* ¶ 19. He alleges that Defendants "used Mr. Quaiz's Clamp concept, design, and photos." (Amended Complaint ¶ 22.) The Amended Complaint earlier defines the term "Clamp" as "a concept and design for a right-angle corner clamp" developed in November 2011. (Id. ¶ 8.) In his specific First

Claim for Relief, Plaintiff alleges that "plans, concepts, designs, specifications, and ideas … are trade secrets, owned by Mr. Quaiz." (Id. ¶ 25). These generic categories fail to "put a defendant on notice of the nature of the plaintiff's claims" or "enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." *Vesta III*, 2016 U.S. Dist. LEXIS 45741 at *4-*5 (D. Or. April 1, 2016) (quoting *BioD, LLC v. Amnio Tech., LLC*, 2014 WL 3864658 at *5 (D.Ariz. Aug. 6, 2014). This is because generic category labels such as "plans" "concepts" "designs" "specifications" and "ideas" are not specific enough to determine the trade secret from the public domain. "It is insufficient to describe the trade secrets by generic category … instead, the party must identify the specific characteristics of each trade secret, such as a particular drawing, process, [or] procedure…" *Id.* (quotation marks omitted). It is not sufficient to simply point to a drawing or other graphical documents and allege that the trade secret is contained someplace within. "As to the drawings themselves, Mr. Kursh does not identify any trade secrets, but rather, describes what the drawings show. Such a description is insufficient." *Id.* at *13 (citation omitted).

Because the concept of a corner clamp is in the public domain, Plaintiff's references to his "concepts" or "ideas" as aspects of alleged trade secrets do not identify the trade secrets. And because Plaintiff's design and plans show a specific way a clamp is attached to an L-shaped frame that is not utilized by Rockler's corner clamping jig, it is even less clear what Plaintiff considers his trade secrets.

4.    Discovery Must Be Restricted

Until and unless Plaintiff identifies his alleged trade secret(s), any discovery will surely exceed the scope of permitted discovery and likely consume both parties and the Court with needless discovery disputes. Such a classic "fishing expedition" should be prevented before further unnecessary motion practice occurs. *Vesta III*, 2016 U.S. Dist. LEXIS 45741 at *5

DEFENDANTS' MOTION TO COMPEL                                          12

("requiring Plaintiff to make pre-discovery disclosures of its alleged misappropriated trade secrets is supported by strong practical and policy reasons, such as (1) assisting this Court in determining relevancy and the scope of discovery; (2) preventing a 'fishing expedition' into Defendants' trade secrets and, (3) preventing needless exposure of the defendant's trade secrets") (citation omitted).

## <u>CONCLUSION</u>

For the reasons given above, the Court should order Plaintiff to identify the allegedly misappropriated trade secret with reasonable particularity before discovery proceeds any further.


Dated: February 8, 2017                Respectfully submitted,

                                       By: <u>*s/John M. Weyrauch*</u>
                                       John M. Weyrauch, *pro hac vice*
                                       Email: jmweyrauch@dbclaw.com
                                       Peter R. Forrest, *pro hac vice*
                                       Email: pforrest@dbclaw.com
                                       DICKE, BILLIG & CZAJA, PLLC

                                       Klaus H. Hamm, OSB# 091730
                                       Email: Klaus.hamm@klarquist.com
                                       KLARQUIST SPARKMAN, LLP

                                       *Attorneys for Defendants*
                                       ROCKLER RETAIL GROUP, INC.
                                       ROCKLER COMPANIES, INC.