# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**MAJED QUAIZ,**

Plaintiff,

v.

**ROCKLER COMPANIES, INC.,** *et al.*,

Defendants.

Case No. 3:16-cv-1879-SI

**OPINION AND ORDER**

Brian D. Chenoweth, Brooks M. Foster, and Andrea R. Meyer, CHENOWETH LAW GROUP PC, 510 SW Fifth Avenue, Fifth Floor, Portland, OR 97204. Of Attorneys for Plaintiff.

Klaus H. Hamm, KLARQUIST SPARKMAN LLP, 121 SW Salmon Street, Suite 1600, Portland, OR 97204; John M. Weyrauch, Peter R. Forrest, and Paul P. Kempf, DICKE, BILLIG & CZAJA PLLC, 100 South Fifth Street, Suite 2250, Minneapolis, MN 55402. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

In his Second Amended Complaint, Plaintiff Majed Quaiz ("Quaiz") asserts three claims

against Defendants Rockler Companies, Inc. ("Rockler") and Rockler Retail Group, Inc.:

(1) misappropriation of trade secrets in violation of Or. Rev. Stat. ("ORS") § 646.461, *et. seq.*;

(2) unjust enrichment; and (3) breach of contract. After Defendants moved for summary

judgment under Rule 56 of the Federal Rules of Civil Procedure, the parties stipulated to the

dismissal of Defendant Rockler Retail Group, Inc. In addition, in his response to Defendants'

motion for summary judgment, Plaintiff concedes that his claim for unjust enrichment should be dismissed. For the following reasons, the Court denies Rockler's motion for summary judgment against Plaintiff's claims of misappropriation of trade secrets and breach of contract.

## BACKGROUND

In November 2011, Quaiz began developing a concept and design for a right-angle corner clamp (the "Clamp") to market and sell for home and commercial uses. Quaiz alleges that his design for the Clamp included the following features: "a one-handed operation that did not require additional tools to utilize it, precise fastening, ability to accommodate a wide size range of projects, and easy use." Between June 2012 and July 2012, Quaiz began looking for manufacturers to produce his Clamp design.

Rockler is a woodworking and hardware supply business. Through its website, Rockler offered to "work directly with the inventor to develop their ideas" by allowing inventors to submit ideas for product development. Rockler's website instructed anyone who wishes to submit an idea to use an online form and "[e]nter a detailed description of your product or idea, and make sure to include its purpose and/or function, and tell us how it works." The website also stated: "By submitting your idea to this website, Rockler agrees to use it only for evaluation. If we determine it is something we would like to develop, we will proceed with a Mutual Non Disclosure Agreement so we can discuss your idea more thoroughly, with protection for both parties." Rockler's website also explained: "We do not steal ideas, and we are willing [to] pay inventors for partnering with Rockler."

On July 12, 2012, Quaiz sent Rockler an email through Rockler's website, stating:

> I've designed a corner clamp that offers more precise fastening and the ability to handle larger material. Its features allow a wide range of adjustability to accommodate all sorts of projects, from picture frames to construction with 2x4's, and it's only fractions of an inch larger than the bigger clamp-it clamp. I believe that my clamp is

> easier to use because it frees the user from holding multiple parts at once. Even with all its features and capability, it's still a very simple clamp to use and possibly manufacture. The clamps [sic] design is finalized to my satisfaction and I can provide 14 different drawings, including 3d views.

Later that day, Rockler responded to Quaiz by email, stating: "If you have any images of your idea that you would like to provide, please reply to this email with the images attached." The next day, July 13, 2012, Quaiz replied to Rockler's email by attaching fourteen drawings of the Clamp. Quaiz's July 12th email submission and July 13th sending of images were the only communications that Quaiz made to Rockler concerning the Clamp.

When inventors or customers submit tool design ideas to Rockler through its online submission portal, they are evaluated by Rockler's new product development ("NPD") group. In 2012, Dan Wenning, Steve Krohmer, and Brian Kramer were part of Rockler's NPD group, which met on a biweekly or monthly basis. The NPD group placed new submissions on a screen for viewing and also handed out printed copies. On August 8, 2012, Rockler notified Quaiz that Rockler was not interested in the Clamp.

Three years later, in 2015, Rockler introduced its "Rockler Clamp-It Corner Clamping Jig" (the "Jig"). After Quaiz reviewed the Jig, he concluded that Rockler had misappropriated Quaiz's concept and design of the Clamp in developing the Jig. In 2016, Quaiz commenced this lawsuit.

**STANDARDS**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in

the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## DISCUSSION

Rockler argues that it is entitled to summary judgment against Quaiz's claim of misappropriation of trade secrets on two independent grounds. First, according to Rockler, the ideas that Quaiz alleges were his trade secrets were originated and used by Rockler in a corner clamping product that Rockler had been selling since 2004. Thus, these ideas were publicly known and do not qualify as trade secrets. Second, Quaiz did not communicate to Rockler that the information that Quaiz submitted was confidential. Rockler also argues that it is entitled to summary judgment against Quaiz's claim of breach of contract on two independent grounds. First, according to Rockler, there was no breach because Rockler had already developed and used the ideas at issue in a corner clamping product that Rockler had been selling since 2004. Second, Quaiz has not satisfied a condition precedent stated in Rockler's website that required a detailed description of any submitted product idea, including the purpose or function of the product and how it works. The Court addresses each argument in turn.

### A. Misappropriation of Trade Secrets

Oregon's trade secret statute defines a trade secret as information that: (a) derives independent economic value, actual or potential, from not being generally known to the public or

to other persons who can obtain economic value from its disclosure or use; and (b) is the subject

of efforts that are reasonable under the circumstances to maintain its secrecy. ORS § 646.461(4).

### 1. Generally Known to the Public

Rockler asserts that its "Mini-Clamp-It Assembly Square" and "Mini Clamping Bars"

(collectively, "Mini-Clamp and Bars") are products that Rockler has been selling well before

Quaiz's submission to Rockler in 2012. Rockler adds that its Mini-Clamp and Bars had each

feature that Plaintiff has claimed was his secret and was publicly known well before July 2012.

During discovery in this case, Quaiz responded to an interrogatory from Rockler as

follows:

> INTERROGATORY NO. 1: For each Clamp concept Plaintiff
> alleges includes a trade secret misappropriated by Defendants,
> identify and explain specifically what each concept is and identify
> and explain what each trade secret associated with each such
> concept is.
>
> RESPONSE: Plaintiff's trade secrets include the concept of
> attaching clamping jaws to the body of an assembly square in such
> a manner that the clamping jaws hold themselves fixed in the
> optimal clamping position, which is perpendicular to the body of
> the assembly square; and the concept of attaching the clamping
> jaws to the body of an assembly square in a manner that allows the
> clamping jaws to be easily separated from the assembly square.

In addition, Quaiz stated in his deposition that these were the only two trade secrets included in

his design. Rockler asserts that its Mini-Clamp and Bars already included these concepts and that

these products were publicly known. Thus, argues Rockler, Quaiz's submission to Rockler in

2012 could not have been trade secrets under Oregon law.

Quaiz responds by arguing, first, that the Mini-Clamp and Bars do not "attach" but

instead are held in place using friction fit. Quaiz adds that this makes Rockler's earlier product

less stable that Quaiz's Clamp. Rockler replies that the difference between attachment and

friction fit is a meaningless distinction. This raises a genuine issue of material fact.

Further, even if Rockler were correct, Quaiz argues, the features of the Mini-Clamp and Bars do not provide the same *functions* as either Quaiz's Clamp or Rockler's later-developed corner clamping Jig. Rockler replies that a functional comparison of its Mini-Clamp and Bars and Quaiz's Clamp is not an appropriate comparison and that the correct comparison should be between the features of the Mini-Clamp and Bars and the features of Quaiz's Clamp that Quaiz expressly claimed in his interrogatory response as constituting his trade secrets. Rockler, however, offers no legal authority to support its conclusion that a functional comparison is inappropriate. In the absence of legal authority to the contrary, the Court concludes that a functional comparison is an appropriate method to show that a product has a unique design and that design was created using information that derives independent economic value, actual or potential, from not being generally known to the public.

In addition, Quaiz's interrogatory response describes the concepts that purportedly makes the design of the Clamp unique, rather than exhaustively list every function that the design could perform that Rockler's earlier clamp could not. Indeed, Quaiz's first submission to Rockler described one of the advantages of Quaiz's design as "a wide range of adjustability to accommodate all sorts of projects, from picture frames to construction with 2x4's, and it's only fractions of an inch larger than the bigger clamp-it clamp." Viewing the facts in the light most favorable to the non-moving party, there is a genuine dispute of fact regarding whether Quaiz's design had a valuable feature based on a concept that was not publicly known.

### 2. Reasonable Efforts to Maintain Secrecy

Rockler also argues that because Quaiz did not expressly notify Rockler that his submission was confidential nor request confidentiality or a nondisclosure agreement either before or after his submissions to Rockler, Quaiz has not taken reasonable steps to maintain

secrecy. Rockler cites *Nike, Inc. v. Dixon*, 2004 WL 1845505 (D. Or. 2004), as support for this argument.

*Nike*, however, is distinguishable. In that patent case, the defendant asserted a counterclaim that Nike misappropriated the defendant's trade secrets. The court found that "the information [the defendant] Dixon disclosed to Nike and other manufacturers from 1995 until 2000 relating to the original and the modified design of the 'Shockee 2000' shoe was unsolicited, and none of the information was identified as confidential." *Id.* at *4. Based on this, the court concluded, "Dixon has failed to present evidence sufficient to establish a genuine issue of material fact exists as to whether Dixon took reasonable steps to protect the secrecy of the 'Shockee 2000' shoe design." The court then granted summary judgment to Nike against Dixon's counterclaim of misappropriation of trade secrets. *Id.*

In contrast, Rockler *solicited* the submissions of ideas from the public and expressly stated that "[b]y submitting your idea to this website, Rockler agrees to use it only for evaluation. If we determine it is something we would like to develop, we will proceed with a Mutual Non Disclosure Agreement so we can discuss your idea more thoroughly, with protection for both parties." Under these circumstances, there is a genuine issue of material fact as to whether Quaiz made efforts that were reasonable *under the circumstances* to maintain the secrecy of his purported trade secrets. *See Vesta Corp. v. Amdocs Mgmt.*, Ltd, 2018 WL 4354301, at *16 (D. Or. Sept. 12, 2018) (collecting cases holding that disclosure to a third-party without a confidentiality agreement does not necessarily foreclose finding that a plaintiff had taken reasonable measures to maintain the secrecy of the alleged trade secret). The Court, therefore, denies Rockler's motion for summary judgment against Quaiz's claim of misappropriation of trade secrets.

## B. Breach of Contract

Quaiz argues that there was a unilateral contract created between Rockler and Quaiz based on Rockler's website, which stated: "By submitting your idea to this website, Rockler agrees to use it only for evaluation." Quaiz contends that by submitting his design, he accepted Rockler's offer to receive a design only for evaluation purposes. Quaiz adds that Rockler breached this contract by using Quaiz's design for more than evaluation purposes.

For purposes of the pending motion only, Rockler accepts that its idea submission form on its website was an offer to enter into a unilateral contract. Rockler argues, however, that it did not breach its assumed contract with Quaiz because the idea that Rockler allegedly took from Quaiz was not Quaiz's idea "in the first place." Rockler argues this based on the same reasons it advances against Quaiz's claim of misappropriation of trade secrets, namely that Rockler already had used the same concepts in its earlier Mini-Clamp and Bars. The Court rejects this argument for the same reasons stated above.

Rockler argues in the alternative that Quaiz did not satisfy the express condition precedent stated on the submission form. Under that condition, Rockler argues, anyone who submits an idea to Rockler for evaluation is required to provide "a detailed description of the product idea being submitted." Rockler's website stated that submitters were to "[e]nter a detailed description of your product or idea, and make sure to include its purpose and/or function, and tell us how it works."

Rockler, however, is making an argument about what was purportedly required that is different from the terms actually stated on its website. Specifically, Rockler is arguing that Quaiz "failed to satisfy express conditions on Rockler's website by not describing his product idea to Rockler in 2012 in the terms Plaintiff has identified in this litigation." That, however, is not what the website required. As stated in Rockler's website, Quaiz must describe the purpose or function

of his Clamp. Quaiz' submission, including his fourteen drawings, is adequate to create a genuine dispute as to whether Quaiz materially performed what Rockler argues was the condition precedent necessary before Quaiz may assert a claim for breach of contract. The Court denies Rockler's motion for summary judgment against Quaiz's claim of breach of contract.

## CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Rockler's Motion for Summary Judgment (ECF 109). The Court dismisses Quaiz's claim of unjust enrichment. Quaiz's claims of misappropriation of trade secrets and breach of contract, however, may proceed to trial.

**IT IS SO ORDERED.**

DATED this 9th day of May, 2019.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge